UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CHARLES SIMMONS, on behalf of Himself and others similarly situated, | ) CASE NO. 1:21-cv-02358 <br> ) <br> ) |
| Plaintiff, | ) SENIOR JUDGE CHRISTOPHER A. <br> ) BOYKO |
| -v- | ) <br> ) **JOINT MOTION FOR APPROVAL** |
| HENKEL US OPERATIONS CORPORATION, | ) **OF SETTLEMENT AND** <br> ) **STIPULATION OF DISMISSAL** <br> ) **WITH PREJUDICE** |
| Defendant. | ) |

**I.    INTRODUCTION**

Representative Plaintiff Charles Simmons on behalf of himself and the current Opt-In Plaintiffs (collectively "Plaintiffs") and Defendant Henkel US Operations Corporation ("Defendant"), collectively ("the Parties") respectfully move this Honorable Court to approve the proposed Settlement reached by the Parties and memorialized in the Joint Stipulation of Settlement and Release ("Settlement" or "Agreement") attached as Exhibit 1.

The proposed settlement will resolve bona fide disputes involving overtime compensation claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as corresponding state wage-and-hour statutes. Plaintiff asserted that Defendant violated the FLSA by failing to pay its hourly, non-exempt manufacturing employees, including Plaintiff, for all hours worked, including overtime compensation at the rate of one and one-half times their regular rates of pay for the hours they worked over 40 each workweek. Specifically, Plaintiff alleged that Defendant violated the FLSA by failing to pay non-exempt manufacturing employees for work that they performed before and after their scheduled shift start and stop times. Defendant denies these claims.

If approved by the Court, the Settlement will provide for the issuance of Individual Payments within fourteen (14) days after the Court approves the Settlement.

The Parties respectfully submit that the proposed Settlement is fair and reasonable and satisfies the criteria for approval under § 216(b) of the FLSA. The Settlement was achieved during arms-length negotiations among the Parties, conducted by experienced counsel, and was reached on November 22, 2022.

The settlement documents submitted for approval or entry by the Court consist of the following:

Exhibit 1:   Joint Stipulation of Settlement and Release

Exhibit 2:   Individual Settlement Agreement and Release

Exhibit 3:   Declaration of Lori M. Griffin

Exhibit 4:   Order of Dismissal and Approving Settlement

The following sections explain the nature of the Action, the negotiations, the principal terms of the Settlement, and the propriety of approving the Settlement and its proposed distributions of settlement proceeds.

## II.    Factual and Procedural Background

### A.    The Action

On December 17, 2021 Representative Plaintiff Charles Simmons filed this Action alleging that Defendant failed to pay Plaintiff and other similarly situated employees for all hours worked, including overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as a "class action" pursuant to Fed. R. Civ. P. 23 alleging violations of the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), R.C. § 4111.03.

Specifically, Plaintiff alleged that Defendant violated the FLSA by failing to pay Plaintiff and other non-exempt manufacturing employees for work that they performed before and after their scheduled shift start and stop times, including, but not limited to: a) changing into and out of their personal protective equipment, including a uniform, gloves, sleeves, boots, safety glasses, earplugs, a hairnet, an apron, and/or a Tyvek suit; b) getting tools and equipment, including scrapers, tape measurers, knives, sample takers, steel brushes, cleaning solutions and/or acrylics; and c) walking to and from their assigned area of the manufacturing floor.

Defendant answered Plaintiff's Complaint denying liability and disputing the damages asserted by Plaintiff.

On April 20, 2022, the Parties filed a Joint Stipulation to Conditional Certification and Notice for the following class of individuals:

> All current and former non-exempt manufacturing employees of Henkel US Operations Corporation who were employed at Henkel's Cleveland, Ohio facility at any time between the period beginning three years prior to the date the Court approves conditional certification and the present.

On April 21, 2022, the Court approved Plaintiff's proposed Notice.

On May 12, 2022, the Notice was mailed out to 234 putative class members.  The first Notice Period closed on June 27, 2022.  On July 19, 2022, the Notice was emailed to 13 putative class members whose Notice was returned as undeliverable. The second Notice Period closed on August 18, 2022.  In addition to Representative Plaintiff, 21 individuals opted-in to the case.

On July 27, 2022 and August 19, 2022, Defendant produced the time and pay records for Plaintiffs.

**B.     Negotiation of the Settlement**

Between January 2022 and November 2022, the Parties engaged in an extensive exchange of information which included the initial production of time and pay information relating to

3

Plaintiff and the Opt-Ins, performing extensive calculations to determine the alleged damages of Plaintiffs, numerous telephone discussions regarding the calculation of the alleged damages and potential resolution, and numerous motions. (Ex. 3, at ¶ 20.)

The Parties engaged in substantial investigation and both formal and informal discovery prior to negotiating the Settlement. (*Id.* at ¶ 21.) Prior to filing the Action, Plaintiffs' Counsel performed a significant amount of research and factual investigation of the claims set forth in the Complaint. (*Id.* at ¶ 22.) This investigation also included a complete analysis and calculation of Plaintiffs' alleged damages. Counsel for the Parties engaged in numerous and lengthy discussions regarding the damage calculations, Plaintiffs' claims and Defendant's defenses. (*Id.* at ¶ 23.)

This included Plaintiffs' Counsel interviewing and obtaining declarations from putative class members. (*Id.* at ¶ 24.)

The Parties engaged in a comprehensive exchange of information regarding Plaintiffs' claims and Defendant's defenses to such claims. (*Id.* at ¶ 25.) This included a complete analysis and calculation of Representative Plaintiff's and Opt-In Party Plaintiff's alleged overtime damages. (*Id.* at ¶ 26.)

The Parties engaged in extensive legal discussion, which included numerous and lengthy discussions between counsel for the Parties. (*Id.* at ¶ 27.)

Between September 2022 and November 2022, the Parties engaged in settlement negotiations, including the exchange of numerous letters and discussions between Counsel for the Parties detailing the Parties' legal and factual positions. (*Id.* at ¶ 28.)

On November 22, 2022, in an effort to reach a compromise and to avoid the expense and burden of litigation, the Parties reached an agreement to settle the lawsuit, on the terms set forth in the Settlement Agreement. (*Id.* at ¶ 30.)

4

### C. The Settlement Terms

If approved by the Court, the Settlement will cover Representative Plaintiff and the 21 Opt-In Party Plaintiffs ("Plaintiffs"). Because the proposed Settlement is an FLSA settlement for employees who have already opted in, as opposed to a Rule 23 *opt-out* settlement that would bind absent class members, and because the opt-ins already consented to Charles Simmons as the Representative Plaintiff and to be bound by any settlement and/or judgement in this case, no fairness hearing is required or requested by the Parties.[1]

The Total Settlement Amount is Forty-Two Thousand Six Hundred Dollars ($42,600.00) which is inclusive of (a) all of the Individual Settlement Payments to Plaintiffs; (b) the Service Award Payment as approved by the Court to Representative Plaintiff Simmons and (c) Plaintiffs' Counsel's attorneys' fees and expenses as approved by the Court. (Ex. 3, Griffin Declaration at ¶ 34.)

Fourteen Thousand Nine Hundred Fifteen Dollars and One Cent ($14,915.01) of the Total Settlement Amount will be divided into Individual Settlement Payments to the Plaintiffs. The Individual Payments were calculated proportionally based on each Plaintiff's alleged overtime damages during the Released Period. The Parties have agreed to a $100.00 minimum payment for any Opt-Ins with less than $100.00 in alleged damages or who worked outside the statutory period. The Individual payments are provided in Appendix 1 of the Settlement. (*Id.* at ¶ 35.)

---

[1] *See Moore v. Ackerman Inv. Co.*, C 07-3058-MWB, 2009 WL 2848858 (N.D. Iowa Sept. 1, 2009) ("Section 216(b) does not expressly require a 'fairness' hearing on a proposed settlement, as Rule 23 of the Federal Rules of Civil Procedure does for class actions pursuant to that rule, and Rule 23 requirements are not directly applicable to a collective action pursuant to § 216(b)."); *McLean v. HSM Elec. Prot. Services, Inc.*, 607CV1680ORL28DAB, 2008 WL 4642270 (M.D. Fla. Oct. 8, 2008) (same); *Barnes v. Benzerenterprises, Inc.*, 607CV1754-ORL-22DAB, 2008 WL 4059839, (M.D. Fla. Aug. 27, 2008) ("the Court determines that there is no need for a fairness hearing").

Five Hundred Dollars ($500.00) of the Total Settlement will be paid to Representative Plaintiff Simmons in addition to his individual payment for his services as Representative Plaintiff and in exchange for a general release of claims. (*Id.* at ¶ 41.) In addition, Twenty-Five Thousand Dollars ($25,000.00) will be paid to Plaintiffs' Counsel for attorneys' fees and $2,184.99 for expenses incurred and expected to be incurred in the action and administration of the settlement. (*Id.* at ¶ 42.) This fee award is reasonable in light of the benefit achieved for Plaintiffs and is significantly less than Plaintiffs' counsel's lodestar. (*Id.*)

In exchange, the Action will be dismissed, and the Plaintiffs will release Defendant from federal and state wage-and-hour claims, rights, demands, liabilities, and causes of action of every nature and description, including but not limited to unpaid wages, unpaid overtime compensation, statutory damages, liquidated damages, interest, attorneys' fees, and expenses that were alleged in the Complaint, pursuant to the Fair Labor Standards Act and corresponding state wage and hour statutes for the Released Period.

### III. THE PROPRIETY OF APPROVAL

The proposed Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. As shown in the attached Declaration of Lori M. Griffin, and as explained below, Court approval is warranted on all scores.

#### A. The Seven-Factor Standard Is Satisfied

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 16(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir.1982) (the court should determine

whether the settlement is "a fair and reasonable resolution of a bona fide dispute"), citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate class action settlements, and the *Crawford* court applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007), citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983), *quoted in Crawford*, 2008 WL 4724499 at *3. As shown below and in the Griffin, Declaration (*see* Exhibit 3), the standard supports approval of the Settlement.

### B. The Settlement Distributions Are Fair, Reasonable and Adequate

As a part of the scrutiny that applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999). All components of the proposed distribution are proper and reasonable, and the settlement as a whole is fair, reasonable and adequate for Plaintiffs.

Here, the seven-factor standard supports approval of the Settlement. The parties' counsel have extensive experience litigating FLSA claims and there is no fraud or collusion. (*See* Exhibit 4.) The expense and likely duration of continued litigation favor approval, in that wage-and-hour

7

cases for groups of employees are always expensive and time-consuming. While only little formal discovery has yet commenced, the Parties have engaged in substantial investigation and exchange of records prior to and during the negotiations, and the issues are well understood by both sides. (*Id*. at ¶ 44.) The outcome is uncertain for Plaintiffs, and the risks of continued litigation are evident for both sides. (*Id*. at ¶ 45.) The opinions of experienced counsel of the parties support the Settlement, as does the Representative Plaintiff. (*See* Exhibit 3.)

All Individual Payments were calculated proportionally on each Plaintiff's alleged overtime damages during the Released Period. (*Id*. at ¶ 35.)

Plaintiffs' counsel calculated the alleged overtime compensation owed by adding eight (8) minutes per shift worked each week to account for unpaid pre-shift work. (*Id*. at ¶ 36.) Any additional overtime hours were multiplied by one and one-half times Plaintiffs' average hourly rate. If approved by the Court, the Proposed Settlement will provide adequate payments to the Plaintiffs for unpaid overtime compensation.

During the Calculation Period, based on the records provided by Defendant as analyzed by Plaintiffs' Counsel, Representative Plaintiff and the Opt-In Plaintiffs were allegedly denied $15,966.65 in overtime compensation for an extra nine (9) minutes of pre-shift work per day, and $14,181.33 in overtime compensation for an extra eight (8) minutes of pre-shift work per day. (*Id*. at ¶ 37.)

Pursuant to the Settlement, Plaintiff will receive approximately eight (8) additional minutes per day in alleged overtime damages for pre-shift work, after the deduction of attorneys' fees and costs and the service award to Representative Plaintiff. (*Id*. at ¶ 38.)

        **C.**    **Class Counsel's Fees and Expenses Are Proper and Reasonable**

8

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b).

The Sixth Circuit underscored that "an award of attorney fees … 'encourage[s] the vindication of congressionally identified policies and rights,'" and thus "we have 'upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages.'" *Fegley*, 19 F.3d at 1134-35, quoting *United Slate,* 732 F.2d at 502; *Posner v. The Showroom, Inc.,* 762 F.2d 1010, 1985 WL 13108 at *2 (6th Cir.1985). In *Fegley*, the Court upheld an award of $40,000.00 in fees even though the plaintiff recovered $7,680.00 in damages. *Id*. Courts outside the Sixth Circuit similarly do not place an undue emphasis on the amount of the plaintiff's recovery. *Fegley v. Higgins*, 19 F.3d 1126, 1134-1135 (6th Cir.1994), citing *Posner v. The Showroom, Inc.,* 762 F.2d 1010 (6th Cir.1985) (internal quotations omitted). See also *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 358 (5th Cir.1990) (upholding award of $9,250 in attorney's fees even though Plaintiff recovered only $1,698.00); *Bonnette v. Cal. Health & Welfare*, 704 F.2d 1465, 1473 (9th Cir. 1983) (affirming award of $100,000 in attorney's fees for a recovery of $20,000); *Gonzalez v. Bustleton Services, Inc.*, 2010 U.S. Dist. LEXIS 85153 (E.D. Pa. Aug 10, 2010) (awarding $76,066 in fees and costs after FLSA trial in which plaintiffs recovered $18,496); *Albers v. Tri-State Implement, Inc.*, 2010 U.S. Dist. LEXIS 23450, *66-86 (D.S.D. Mar. 12, 2010) (awarding $43,797 in fees even though plaintiffs' combined damages totaled only $2,137.97); *Fedotoff v. American Testing Co.*, Case No. CV-07-626871 (Cuyahoga County Court of Common Pleas) (awarding $192,856 in attorneys' fees and costs although the plaintiff recovered $18,924 in overtime); *Perrin v. John B. Webb & Associates, Inc.*, 2005 WL 2465022 (M.D. Fla. 2005) (awarding $7,446.00 in attorneys' fees and costs although the plaintiff

recovered $270.00, and recognizing that "in order for plaintiffs with minimal claims to obtain counsel, those counsel must be able to recover a reasonable fee for their time."); *Parks v. Eastwood Insurance Services, Inc.*, 2005 WL 6007833 (C.D. Cal. 2005) (awarding over $2 million in attorneys' fees and costs although the plaintiffs recovered $1.2 million); *Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 955-56 (E.D. Wis. 2003) (awarding $36,204.88 in fees even though plaintiff's damages totaled only $3,540.00); *Griffin v. Leaseway Deliveries, Inc.*, 1992 U.S. Dist. LEXIS 20203 (E.D. Pa. Dec. 31, 1992) (awarding attorney's fees of $33,631.00 for a plaintiff's award of $17,467.20); and *Holyfield v. F.P. Quinn & Co.*, 1991 U.S. Dist. LEXIS 5293, *1 (N.D. Ill. Apr. 22, 1991) (awarding $6,922.25 in attorney's fees for a judgment in the amount of $921.50).

Plaintiffs' Counsel's Declaration contains information that demonstrates the reasonableness of the proposed fees and expenses. (*See* Exhibit 3.). The litigation expenses sought to be reimbursed are proper and reasonable. Plaintiffs' Counsel has incurred expenses in the amount of $2,184.99, which included $402.00 incurred for the filing fee and postage for serving the complaint; $707.99 for mailing the Notice; $500.00 in miscellaneous litigation expenses; and $575.00 for a public records search. (*Id.* at ¶ 48.) All expenses were incurred during the course of the litigation of this Action or will be incurred during the administration of the Notice to the Class of the Settlement. (*Id.*)

## IV. <u>CONCLUSION</u>

For the reasons addressed above, the Parties respectfully request that this Court approve the Settlement by entering the proposed Order of Dismissal and Approving Settlement attached as Exhibit 4.

Respectfully submitted,

| | |
|---|---|
| */s/ Lori M. Griffin* | */s/ Michele L. Jakubs* |
| Lori M. Griffin (Ohio 0085241) | Michele L. Jakubs (Ohio 0071037) |
| Anthony J. Lazzaro (Ohio 0077962) | Jessi L. Ziska (Ohio 0096750) |
| Alanna Klein Fischer (Ohio 0090986) | Zashin & Rich Co., LPA |
| Matthew S. Grimsley (Ohio 0092942) | Ernst & Young Tower |
| The Lazzaro Law Firm, LLC | 950 Main Avenue, 4th Floor |
| 34555 Chagrin Boulevard, Suite 250 | Cleveland, Ohio 44113 |
| Moreland Hills, Ohio 44022 | Telephone: 216-696-4441 |
| Telephone: 216-696-5000 | Facsimile: 216-696-1618 |
| Facsimile: 216-696-7005 | mlj@zrlaw.com |
| lori@lazzarolawfirm.com | jlz@zrlaw.com |
| anthony@lazzarolawfirm.com | |
| alanna@lazzarolawfirm.com | Attorneys for Defendant |
| matthew@lazzarolawfirm.com | |

Attorneys for Plaintiffs

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2022 a copy of the foregoing was sent to all parties by operation of the Court's electronic filing system. Parties may access the filing through the Court's system.

      /s/ Lori M. Griffin
    One of the Attorneys for Plaintiff